[No. 12867. Department One. August 4, 1915.]

JOHN MARKEN et al., *Respondents*, v. AUGUST JACOBS et al., *Appellants.*[1]

CANCELLATION OF INSTRUMENTS—EVIDENCE—SUFFICIENCY. The presumption that a deed of lands, sold for taxes, from the tax title grantee to the former owner's son-in-law, evidences the true state of the title, subject to an admitted right of use by the father-in-law and his wife, is not overcome by clear, cogent and convincing evidence, where it appears that the land was paid for by money borrowed upon a joint note secured on the personal property of each, that the son-in-law desired to preserve a home for the old people, who continued to live on the land and had the use of the same in consideration of the payment of the taxes, the son-in-law meanwhile making various improvements by building fences and buildings, without objection by the old people.

Appeal from a judgment of the superior court for Snohomish county, Alston, J., entered August 17, 1914, upon findings in favor of the plaintiffs, in an action for equitable relief, tried to the court. Reversed.

*E. C. Dailey*, for appellants.

*L. N. Jones* and *Jones & Clark*, for respondents.

CHADWICK, J.—Prior to April 18, 1902, respondents were the owners of a certain forty-acre tract of logged-off land in Snohomish county. On April 18, 1902, it was sold for taxes to third parties. Thereafter the purchasers at the tax foreclosure sale sold the property, which they testify was worth $1,000, to appellant August Jacobs. Appellants are the son-in-law and daughter of the respondents. Appellant August Jacobs, either at his own instance or at the request of respondent John Marken, entered into negotiations for the purchase of the land. The purchase price was paid with $300 borrowed from one Martin. This was repaid out of the sale of shingle bolts which Jacobs and Martin took from the land, Marken being allowed $1 per cord. Respondents

[1]Reported in 150 Pac. 1161.

continued to live upon the land and to improve it in a small way. They cleared about four acres and dug some ditches and slashed and burned about thirty-five acres. They paid the taxes up to two years before the trial. In 1912, appellants sold the place where they then resided and moved on the land, without any objection on the part of respondents, and proceeded to improve and cultivate all that was susceptible of cultivation, except a garden patch which was taken care of by the respondents. They built a house worth from $1,200 to $1,500, a milk house, a walk for the cows, and some fencing, aside from general repairs.

Appellants assert that it was their purpose to buy the land so as to preserve a home for the respondents, who were, at the time of the trial, respectively sixty-nine and sixty years old, and that all that they expected of the old folks was to pay the taxes from year to year. Respondents assert that title was taken in the name of appellant August Jacobs to protect the land from a prior and unsatisfied mortgage. The note for the $300 was signed by both Marken and Jacobs, and the chattel mortgage which was given to secure it covered the personal property of each of them. Testimony of several witnesses tends to show that Jacobs said in the beginning that he wanted to buy the property for the old folks, one of the sellers saying that it was because of this fact that he sold at a price so far under the true value of the property. On the other hand, the deputy assessor who assessed the property for the years 1905-6-7 and 1914, testifies that Marken always told him the land belonged to Jacobs. The deputy who assessed the land in 1908 testifies concerning the listing of personal property, and further, " 'this seems to be your property, but this land belongs to somebody else.' 'Yes,' he said, 'my son-in-law,' and I remembered Mr. Jacobs when he used to be around Pilchuck, and I said, 'Where does he live now?' 'He lives over around Cedarhome.' And I said 'He owns this land?' 'Well,' he said,

'it is in his name.' He said, 'It is all in the family, anyway.' "

Respondent John Marken testified:

"Q. Did you have any agreement with Jacobs that you were to have the use of the land for paying the taxes on it? A. Yes, sir, there was an agreement with him that I should pay the taxes. Q. And you were to have the use of the land? A. Yes, sir. Q. You were to have what you got off the place? A. Yes. Q. You paid the taxes, did you? A. Yes, sir. Q. How long? A. Well, I paid them until the last two years. Q. You paid them until the two last years? A. Yes, sir. Q. And you had everything from the place, didn't you? A. Yes, sir. Q. You had whatever there was there? A. Yes, sir. Q. Had the use of the ground, the orchard and— A. Yes, sir. Q. And whatever there was there you had? A. Yes, sir. Q. And for that you paid the taxes? A. Yes, sir. Q. And you had that understanding with Mr. Jacobs, did you? A. Yes, sir. Q. How old are you, Mr. Marken? A. I am sixty-nine. Q. How old is Mrs. Marken? A. Oh, she is about sixty. Q. Has Jacobs built any fencing on the place? A. Oh, yes. Q. He has built some fences there. He built a house and a milk-house, you say? Is that right? A. He built the milk-house, yes. He has got two— Q. Built a house and a milk-house and— A. Two milk-houses. Q. What did he build? Two milk-houses? A. Yes, sir, he has got two milk-houses. Q. And the house? A. And I have got one."

Respondents made no objections to the building of the buildings, nor was there a resort to any of the legal remedies which were at hand to protect respondents from the alleged trespass of the appellants. The parties were on friendly terms until about the time this action was commenced.

There is a presumption that a deed evidences the true state of a title, and evidence to overcome it must be clear, cogent and convincing. We think this presumption has not been overcome. We find that the title to the property is in appellants, subject to the right of the respondents to live upon the land during their lifetime. This is admitted by appellants.

We have not overlooked the fact that ·another son-in-law testified that, at about the time the land was purchased, appellant August Jacobs said that he did not intend to keep the land, but would deed it back when respondent John Marken got on his feet again; but when measured by all the facts and subsequent conduct of the parties, such admission, if made, is not enough to overcome the position of appellants; that is, that they own the property subject to respondents' right to live upon it during their lifetime.

Reversed, with directions to enter a decree accordingly.

MORRIS, C. J., MAIN, MOUNT, and HOLCOMB, JJ., concur.